S. S. DILENBECK, Appellant, v. LUM HERROLD, Appellee.

**BILLS AND NOTES:** Transfer—Evidence. The declaration of one
1    acquiring a note to which he was not a party, to the effect that
     he wishes to "take up" the note, does not necessarily exclude
     the purpose to *purchase* it.

**EVIDENCE:** Parol as Affecting Writing—Bills and Notes—In-
2    dorsement as to Payment. The indorsement "Paid," on the face
     of a promissory note, while prima-facie evidence of a complete
     satisfaction, is, nevertheless, subject to oral explanation or con-
     tradiction, especially as against the maker, who was not a party
     to the transaction which resulted in such indorsement.

**EVIDENCE:** Relevancy, Competency, and Materiality—Intent and
3 · Purpose. The holder of a note (not a party thereto on its face)
     may testify, in an action thereon, that, in acquiring the note, it
     ·was not his *intention* to voluntarily pay the note, but that it
     was his *intention* to purchase the note.

**BILLS AND NOTES:** Actions—Title to Sustain Action. Plaintiff's
4    title to a note, though acquired from one who was without au-
     thority to sell it, may not be questioned by the maker, in an ac-
     tion thereon, when the former owner acquiesced in and ratified
     the unauthorized sale.

*Appeal from Dallas District Court.*—L. N. HAYS, Judge.

OCTOBER 25, 1917.

REHEARING DENIED APRIL 2, 1918.

SUIT upon a promissory note. At the close of the
plaintiff's evidence, there was a directed verdict for the de-
fendant. The plaintiff appeals.—*Reversed and remanded.*

*Dugan & Dugan,* for appellant.

*H. G. Giddings, White & Clarke,* and *Harry Wifvat,* for
appellee.

EVANS, J.—The note sued on was for $1,070, and was
drawn payable to the Citizens Trust and Savings Bank, of
which bank the plaintiff, Dilenbeck, was the president, and

owner of the majority of its stock. The de-
fendant claiming a defense to the note and
having repudiated the same, the plaintiff
claims to have acquired the note from the payee by paying
therefor its full amount of principal and interest. The
method by which the plaintiff claims to have acquired the
note was informal and more or less defective, and the de
fendant challenges its legality. The defendant contends
that the plaintiff did not acquire the note, though he paid
the amount thereof to the payee. He also contends that
what was done by the plaintiff amounted to a voluntary
payment of the note, whereby it was fully discharged as
against the defendant.

1. BILLS AND
   NOTES : trans-
   fer : evidence.

The circumstances surrounding the parties become of
important consideration. The plaintiff transacted the busi-
ness with the defendant out of which the note originally
arose. The real consideration for the note was the pur-
chase of stock in the Shorthill Corporation, which was being
urged and promoted by the plaintiff. So far as the payee
bank was concerned, however, the transaction amounted
to a loan. The corporate enterprise appears to have failed
before it fully materialized. One of the defenses set up by
the defendant was that he had been induced to enter into
his undertaking through the false representations of Dilen-
beck. This claim of defense had been put forward by him
to Dilenbeck before Dilenbeck claims to have acquired the
note. Dilenbeck's attitude, in brief, is that, in view of the
defense, he undertook to protect the bank by assuming the
burden of the defense himself. This, of course, was also
fair and advantageous to the defendant, in that it enabled
him to interpose his defense without any barrier of the
innocence of the payee in the transaction. The circum-
stances of the alleged transfer of the note, as they ap-
pear in the record, were very brief, and leave much
to implication.

As a witness, the plaintiff testified, in general terms, that he purchased the note from the bank. The only individuals directly connected with the circumstances of the transfer were the plaintiff himself and McQuery, the assistant cashier. On cross-examination, the plaintiff testified to the following details:

"At this time, I told Mr. McQuery that I would take up the Lum Herrold note, and I wished he would figure the interest on it; and he proceeded to do it. I don't know that McQuery was ever given any authority to sell any of the assets of the bank. I don't know that I ever knew of his exercising any authority in selling notes or other assets of the bank. He had authority to accept payment on past-due paper. He did so right along. I do not know that the board of directors ever authorized him to sell any of the bank's notes or other bills receivable. I did not attend all of the directors' meetings."

He also testified that he paid therefor at that time the full amount of principal and interest, and that he received from McQuery the possession of the note, and placed the same with his own private papers. McQuery, however, had written upon the back of the note the following endorsement: "Paid by S. S. Dilenbeck and the stock as collateral forfeited to him." The plaintiff testified also, in substance, that it was not his intention at any time to discharge the note, but to purchase the same; that he did not know, at the time, of the endorsement put thereon by McQuery, and only discovered the same some months later; that there was, in fact, no stock held as collateral of said note; that it was the custom of the bank, in the cancellation of notes, to use the cancellation stamp, and that the same was not used upon the note in question.

Defendant's motion for a directed verdict, at the close of plaintiff's evidence, was based upon the two following grounds:

"First.    Under all the evidence in the record in this case, the jury would not be warranted in finding that the plaintiff was the holder of the promissory note sued upon, or the owner thereof.    Second.    Under all the evidence in the record, it affirmatively appears that the plaintiff, on or about the 26th day of August, 1915, paid said note sued upon herein; that such payment was made voluntarily by the plaintiff, and not at the request of the defendant or for the defendant's benefit, and by such payment the note was satisfied and discharged."

The motion was sustained upon both grounds.

It will be noted that the first ground presented matter in abatement, and the second, matter in bar.    It will be seen at a glance, also, that, if the first ground were good, the second could not be considered, for the reason that, if the plaintiff had not acquired the note, no adjudication against him could bar the true holder of the note, who was not a party.    Again, if the first ground were overruled, the ruling would necessarily be fatal to the second ground. That is, if it should be found that the transaction between plaintiff and McQuery amounted to a transfer of the note, then it could not be deemed to have been a voluntary payment and discharge of the note.    The pivot of the case, therefore, turns upon the first ground.

In support of the order of the trial court, the appellee presents three general propositions in argument.    The first is that the plaintiff's own testimony shows that he dis-

2. EVIDENCE: parol as affecting writing: bills and notes: indorsement as to payment.

charged the note, in that he told McQuery that he wanted to "take up" the note.    It is urged that the expression "take up" has a well-defined meaning, which is "to pay or discharge."    Undoubtedly, the language would bear such an interpretation.    But we know of no hard and fast rule of definition which would forbid any other interpretation.    We think it was clearly competent for the plaintiff to put the

interpretation which he did upon the language used by him, and especially so in view of its consistency with all the circumstances surrounding the transaction. The second argument is that the instrument was endorsed "Paid" by McQuery, and that it was not competent for the plaintiff to contradict such endorsement by a statement of his own intention or purposes. The endorsement undoubtedly operates presumptively in favor of the defendant's contention. The contention, however, that the plaintiff could not contradict or explain this endorsement, as against the defendant, cannot be sustained. The contract of transfer of the note, if there was a transfer, was not one to which defendant was a party. He is in no position, therefore, to urge incompetency of oral evidence against the writing, because he himself was never bound by the writing. If the controversy were between Dilenbeck and the bank, a different question would be presented. Even then, the authorities are uniform that such a writing as is here considered is subject to explanation. *Jones v. General Construction Co.,* 150 Iowa 194.

Evidence of the intention of the plaintiff had peculiar pertinency. The payment of the amount of the loan being conceded, the issue between the parties is necessarily determined by the *purpose* of such payment.

3. EVIDENCE: relevancy, competency, and materiality: intent and purpose. The defendant averred in his answer, in substance, that the money was paid for the purpose of discharging the note, and that it was so done "voluntarily." The contention of the plaintiff, in substance, is that he paid the money for the purpose of acquiring the note. The evidence of the "purpose" of such payment was, therefore, proper to be considered.

The third argument is that the plaintiff, as an attempted purchaser of the note, could not act in that transaction as agent for his bank, and that McQuery, as assist-

ant cashier, had no authority to sell notes.

4. BILLS AND NOTES: actions: title to sustain action. If the bank had repudiated the transaction, and were the contending party with the plaintiff, this argument would be unassailable. On the other hand, if the bank was satisfied with the transaction such as it was, its right of complaint did not inure to the defendant. Even though McQuery had no direct authority to sell notes, yet if he assumed the authority and thereby received a beneficial consideration to the bank, his act could be ratified, or acquiesced in. The question of excess of authority would thereby be wholly waived. The fact that the bank accepted the consideration and never repudiated the transaction would tend to show a ratification, or at least an acquiescence and waiver. Whenever the transaction became confirmed in any manner, as between the bank and Dilenbeck, it was not in the power of the defendant to declare it void.

We think it clear that the evidence was sufficient to sustain a finding that the plaintiff acquired a transfer of the note to himself, and that the court erred in sustaining the first ground of the defendant's motion to direct. As already indicated, this conclusion carries down the second ground with the first. The judgment below must, accordingly, be—*Reversed and remanded.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.